IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>DEMETRIUS C. MORRIS,<br><br>      Defendant. | Case No. 22-CR-30012-SPM-2 |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Suppress Evidence and Statements along with a supporting memorandum filed by Defendant Demetrius C. Morris (Docs. 84, 85). The United States (the "Government") filed a response to the motion (Doc. 88). Morris then filed a reply (Doc. 91). The Government later supplemented its response with case law that addressed claims of Fourth Amendment standing when searching a stolen vehicle (Doc. 98).[1]

## FACTUAL & PROCEDURAL BACKGROUND

In February 2022, a grand jury returned a three-count indictment against Morris that charged him with possession with intent to distribute fentanyl and illegal possession of a machine gun based on a search of a vehicle outside of a gas station (Doc. 25). The indictment also contained a forfeiture allegation that sought forfeiture of seized firearms.

Morris filed a motion to suppress all evidence and statements obtained

---

[1] That supplement was not dispositive of the issue at hand and Court need not address it here.

pursuant to his encounter with police and the search of the vehicle (Doc. 84). Morris argued that the seizure of his person violated the Fourth Amendment because the officer lacked reasonable suspicion and probable cause (Doc. 85). As a result, Morris argued, the search of the vehicle was unlawful as fruit of the poisonous tree and incriminating statements made by Morris while under interrogation were also fruit of the poisonous tree. The Government argued that the officer was reasonable in his belief that criminal activity was afoot when he and the other officers engaged and quickly seized Morris. The Government additionally contended that the officer also had probable cause to arrest Morris on the belief that Morris had violated the law.

On March 23, 2023, the Court held an evidentiary hearing and Officer Aaron Morgan testified regarding his encounter with Morris that led to the search and his arrest (Doc. 104). The Court finds that Morgan was credible as to facts about which he had personal knowledge. This assessment is based on his demeanor while testifying, the foundations he had for testifying to certain facts, and the consistency of his material testimony with other evidence in the case.

Morgan has been in law enforcement for sixteen years and is employed as a police officer by the Village of Sauget Police Department going on two years. He is assigned to patrol the area of Sauget at night, surveilling the heavily trafficked area where a gas station is located for most, if not all, of his shift. Morgan stated that he considers the area a "high crime" area – according to Morgan, ninety-eight percent of the police department's calls are for this area. Morgan recounted that the area has a lot of gunfire along with armed robbery, criminal trespass, fights, vehicle break-ins, and several murders. He also testified that in his eight months as a police officer with

Sauget prior to this encounter, he made sixty arrests for illegal firearms.

The gas station at the center of this area, Route 3 Liquor, also sells liquor and is open twenty-four hours a day. The doors to store are locked every night at 11:00 p.m., but the store remains open to customers via a service window. It is adjacent to two nightclubs and two gentlemen's clubs.

On January 20, 2022, Morgan went on shift. He drove his patrol car to a parking lot approximately eighty yards north of Route 3 Liquor and parked behind a telephone pole with his car facing towards the store. At approximately 2:00 a.m. on January 21, 2022, while sitting in his patrol car and looking through his 12x magnification binoculars towards the well-lit gas station, Morgan observed an Infiniti sport utility vehicle ("SUV") with no front license plate back into a parking space next to the service window. Both the State of Illinois and the State of Missouri require front and rear license plates with few exceptions. Morgan stated that "cars that usually back in are trying to conceal either the rear plate or the fact that they don't have a rear plate on the vehicle." He also noted from his experience that some of those vehicles are later identified as stolen.

From there, Morgan saw Morris exit the SUV from the driver's side and put something under his arm. As Morris faced the service window, Morgan could see some of the object under his arm – the barrel and tactical light of a firearm. Morgan stated that he had never seen a concealed carry licensee in the State of Illinois tuck a firearm in that way and the firearm presented a safety issue due to the inability of the holder to ensure that it was pointed in a safe direction.

As Morris stood at the window for service, Morgan testified that a male clerk

motioned to Morris indicating he would not serve Morris with the firearm. Morris then walked towards the SUV and knocked on the rear passenger side window. The window rolled down and, in full view, Morris placed the firearm, described as a black handgun with a drum magazine, into the SUV. After seeing the firearm in full, Morgan radioed another officer to describe the individual and the firearm. At this point, Morgan stated that it was his intention to approach and detain Morris to ascertain if he had a Firearm Owners Identification ("FOID") card and a concealed carry license.

After backup arrived and that officer positioned himself to support Morgan, Morgan drove across the parking lot, into the Route 3 parking lot, and parked in front of the SUV, blocking it in. As Morgan exited, Morris walked back to the SUV after going to the service window a second time. Morgan exited his patrol car and ordered Morris to stop. Morris ignored the order and hurried to the back of the SUV to get to the driver's side. Morris continued to ignore Morgan's order, and the orders of the additional officer on scene. The officer eventually tazed Morris and he was handcuffed. After exiting the SUV, the passenger was also handcuffed. Approximately six minutes into the encounter, Morgan had determined that Morris did not have a FOID card or a concealed carry license through his patrol car computer.

Morgan searched the SUV. A Glock 9-millimeter handgun with a drum magazine and tactical light was retrieved from the driver's side of the SUV approximately six minutes in as well. The firearm was modified with a "Glock switch" that allowed fully automatic fire. Morgan also found a Taurus G3 9-millimeter handgun and narcotics, including fentanyl. Further inspection of the exterior of the

Page 4 of 9

SUV revealed an expired temporary rear plate for a 2020 Toyota vehicle. The proper plate for the SUV was inside the SUV. Dispatch confirmed the SUV was stolen out of St. Louis County in Missouri.

After the hearing, both parties filed supplemental briefs for the Court to consider (Docs. 105, 106).

## LEGAL STANDARDS

A motion to suppress seeks to exclude evidence obtained in violation of a defendant's constitutional rights. The Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. This negative right requires that searches and seizures be founded on objective justification. *United States v. Mendenhall*, 446 U.S. 544, 551 (1980).

A law enforcement officer may seize a suspect for a brief detention "which give the officers a chance to verify (or dispel) well-founded suspicions that a person has been, is, or is about to be engaged in criminal activity." *United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995). Reasonable suspicion is more than a "hunch" but less than probable cause and must be supported by specific and articulable facts. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). A court must examine the totality of the circumstances in order to determine whether a search or seizure is reasonable under the Fourth Amendment. *See United States v. Cortez*, 449 U.S. 411, 417 (1981); *see also Samson v. California*, 547 U.S. 843, 848 (2006). The evaluation of the circumstances is "based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125.

During an investigatory stop, probable cause may be required when restraint becomes intrusive to a point where it is tantamount to an arrest, also known as a de facto arrest. *See United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011). "Probable cause denotes more than a mere suspicion, but does not require certainty." *United States v. Fleischli*, 305 F.3d 643, 651 (7th Cir. 2002). Probable cause exists if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, [to] believ[e], in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *U.S. v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).

In each case, the Government bears the burden of proof. *See U.S. v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985).

### DISCUSSION

In Morris's post-hearing supplemental brief, particular focus is placed on the initial stop of Morris, which he characterizes as illegal, thus tainting the search of the SUV and resulting incriminating statements. He also focuses on firearms law in Illinois related to carrying in a vehicle. To address these arguments, because the protections of the Fourth Amendment are limited in scope to unreasonable searches and seizures, the Court must find the touchpoint where Fourth Amendment concerns were first implicated and then assess whether a violation occurred. *See United States v. Ford*, 333 F.3d 839, 844 (7th Cir. 2003).

Initially, it is important to state that reasonable suspicion is only required when a suspect has been seized. *See United States v. Douglass*, 467 F.3d 621, 623 (7th

Cir. 2006). If a reasonable person feels free to disregard the police and go back to whatever he was doing, reasonable suspicion is not required. *See Fla. v. Bostick*, 501 U.S. 429, 434 (1991). A seizure occurs when the suspect yields to a show of authority. *See Cal. v. Hodari D.*, 499 U.S. 621, 626 (1991). According to Morgan's credible testimony, Morris did not submit to the show of authority – he ignored Morgan's order and retreated to the back of the SUV. At this point he was not seized under the Fourth Amendment. It was not until another officer tazed Morris that a seizure occurred.

At that point, reasonable suspicion was required. In determining whether reasonable suspicion for a stop exists, the Court must "evaluate, under an objective standard, the totality of the circumstances known to [the officer] at the time and determine if a reasonable officer in those circumstances would have been suspicious." *Ford*, 333 F.3d at 834. Here, the Government mostly relies on Morgan's credible testimony of Morris' earlier open-carry of a firearm and flight from officers in a high-crime area.

Addressing flight first, evasive behavior is a factor to consider when determining reasonable suspicion. *Wardlow*, 528 U.S. at 124 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975); *Fla. v. Rodriguez*, 469 U.S. 1, 6 (1984); and *United States v. Sokolow*, 490 U.S. 1, 8-9 (1989)). While a person has the right to ignore police approaching to ask questions, flight runs counter to that. *Id.* at 125. Moreover, the evidence supports a finding that the area in which the flight happened – a heavily trafficked area of a city that gets the bulk of emergency calls to police, a large amount illegal firearm arrests, and some violent crimes – was legitimately known to the officers to be a "high-crime" area. Police officers may rely on their

experience and training to form reasonable suspicion based on their surroundings. *See Wardlow,* 528 U.S. at 124; *see also United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) (citing *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002)). Adjacently, Morgan also suspected that the SUV was stolen based on the behavior of Morris and the area in question.

But more importantly, Morgan credibly testified that he spotted a firearm under Morris' arm when he initially left his SUV and walked towards the service window.[2] While gun possession by itself is not inherently unlawful, licensed concealed carry remains the only legal way to bear a firearm in public in Illinois because open-carry of a firearm is a crime of "Aggravated unlawful use of a weapon." *See* 720 ILCS 5/24-1.6(a).

Together, these factors provided, at bare minimum, reasonable suspicion to seize Morris and use the least intrusive means to verify or dispel Morgan's suspicion in a short period of time. This led Morgan to inquire as to whether Morris had a FOID card. Morgan testified that he did not remember Morris' response. But, again, even Morris' FOID card ownership would not have dispelled Morgan's suspicion about the open-carry violation. Morgan could only dispel his suspicion by searching the SUV, which he did, yielding the two firearms and narcotics.

Furthermore, while drawing weapons and handcuffing an individual does not necessarily convert an officer's stop into an arrest, especially when officer safety is a

---

[2] In his supplement, Morris characterizes Morgan's testimony describing the way the firearm was carried as "partially concealed" to connote concealed-carry, but that characterization is inaccurate (Doc. 105). According to Morgan, the firearm was far from hidden.

Page 8 of 9

concern, *see United States v. Olson*, 41 F.4th 792, 799 (7th Cir. 2022), the circumstances show that Morgan had probable cause to effectuate a full-blown arrest and search of the SUV at this point. A prudent person with the officers' knowledge and experience would be more than just suspicious that Morris open-carried a firearm. Therefore, assuming an arrest occurred, that arrest was valid and the ensuing search incident to arrest justified the recovery of the firearms and narcotics.

## Conclusion

Accordingly, the Motion to Suppress Evidence and Statements (Doc. 84) filed by Defendant Demetrius C. Morris is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** April 10, 2023

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
